# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NATTLEE NICHOLE CHAVEZ,

      Plaintiff,

vs.                                                                                   No. CIV 21-0872-JB-SCY

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF
AGRICULTURE and
JOHN DOES 1-4,

      Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** comes before the Court, under rule 12(b)(6) of the Federal Rules of Civil

Procedure, on the Plaintiff's Complaint for Damages Caused by Fraud, Deprivation of Civil Rights

and Other Tortious Conduct, filed September 3, 2021 (Doc. 1)("Complaint"). Plaintiff Nattlee

Nichole Chavez appears pro se. For the reasons set out below, the Court will dismiss this case

without prejudice for failure to state a claim upon which relief can be granted.

## PROCEDURAL BACKGROUND

Chavez alleges that United States Department of Agriculture ("USDA") employees

"executed and issued and transferred a promissory note and mortgage in Chavez's name when she

was only 7 years old." Complaint ¶ 9, at 4. Plaintiff also alleges that "the USDA initiated a

complaint for foreclosure action against Chavez on the Loan Documents," and "report[ed] the

foreclosure action to third parties such as the national credit bureaus, Internal Revenue Service,

and other government agencies directly caus[ing] financial devastation for Chavez in all aspects

of life from the age of 18 (when she became aware) into young adulthood as [a] 26 year old

woman." Complaint ¶¶ 12-13, at 4. Chavez asserts claims pursuant to the Federal Tort Claims

Act, 28 U.S.C. § 1346(b), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617, 42

U.S.C. § 1983, and criminal statutes regarding bank fraud, identity theft, and deprivation of rights

under color of law.

The Honorable Steven C. Yarbrough, United States Magistrate Judge for the United States

District Court of the District of New Mexico, notified Chavez:

> Plaintiff has not met her burden of alleging facts showing that the Court has jurisdiction over her claim pursuant to the Federal Tort Claims Act ("FTCA") . . . Although Plaintiff alleges she "has satisfied the notice requirements set forth in the FTCA," she has not set forth factual allegations clearly stating when she found out the USDA executed a promissory note and mortgage in her name, when the USDA initiated a foreclosure action against Plaintiff and when Plaintiff found out about the foreclosure action, when the USDA notified other third parties of the foreclosure action and when Plaintiff found out about the notification, when she presented her tort claim in writing to the USDA, the contents of her claim, or when the USDA mailed its notice of final denial of Plaintiff's claim to Plaintiff.
>
> The Complaint also fails to state a claim pursuant to the FTCA against the USDA and the individual defendants because "[t]he United States is the only proper defendant in a federal tort claims action." *Gaines v. Pearson*, 516 Fed. App'x 724, 726 (10th Cir. 2013).
>
> . . . .
>
> The Complaint fails to state a claim for fraud. . . . [because] [t]he Complaint does not identify the false representations, the contents of those false statements, the persons making the false statements, the date they made the false statements or Plaintiff's detrimental reliance on the false statements [as required by rule 9 of the Federal Rules of Civil Procedure]. . . .
>
> The Complaint fails to state a claim upon which relief can be granted pursuant to 18 U.S.C. § 1344, Bank fraud, 18 U.S.C. § 1028A, Aggravated identity theft, and 18 U.S.C. § 242, Deprivation of rights under color of law, because 18 U.S.C. § 1344, 18 U.S.C. § 1028A, and 18 U.S.C. § 242 are criminal statutes. "[C]riminal statutes do not provide for private civil causes of action." *Kelly v. Rockefeller*, 69 Fed. App'x 414, 415-416 (10th Cir. 2003); *see Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). . . .
>
> The Complaint fails to state a claim pursuant to the Real Estate Settlement Procedures Act ("RESPA"). Plaintiff alleges that when the "USDA engaged settled [sic] a real-estate transaction and received the benefit of interest and fees related to a federal mortgage issued to the minor child [Plaintiff]," Complaint ¶ 64, at 12, the USDA violated a provision of RESPA which states in relevant part:

No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).   Under RESPA "the term 'person' includes individuals, corporations, associations, partnerships, and trusts." 12 U.S.C. § 2602(5). "Person" does not include federal agencies such as the USDA.

. . . .

The Complaint fails to state a *Bivens* claim against the United States and the USDA [because] A "*Bivens* claim can be brought only against federal officials in their individual capacities. *Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies." ... The Complaint currently fails to state a claim upon which relief can be granted pursuant to *Bivens* against the John Doe Defendants because the factual allegations do not explain what *each* individual John Doe Defendant did.

Memorandum Opinion and Order for Amended Complaint at 2-5, <u>Chavez v. United States</u>, No. No. CIV 21-0872 SCY, 2021 U.S. Dist. LEXIS 175626 at *2-7 (D.N.M. Sep. 14, 2021), filed September 14, 2021 (Doc. 6)("MOO")(citations omitted).  Magistrate Judge Yarbrough ordered Chavez to file an amended complaint and notified Chavez that "[f]ailure to timely file an amended complaint may result in dismissal of this case."  MOO at 6.  Chavez did not file an amended complaint by the October 5, 2021, deadline.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the plaintiff] could prevail, it should do so despite [his or her] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax

and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

### LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)("Twombly").  A district court should not dismiss a pro se complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Fed. R. Civ. P. 12(b)(6).  While dismissal under rule 12(b)(6) generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule 12(b)(6) is not an error if it is "'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  Curley v. Perry, 246 F.3d at 1282 (quoting Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991)).

### LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action and it does not create any substantive rights; substantive rights must come from the Constitution of the United States of America or from a federal statute.  See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'" (second alteration added by Nelson v. Geringer)(quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998))). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court of the United States has clarified that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  Consequently, there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is

inapplicable to *Bivens*[1] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is:

---

[1]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court of the United States held that a violation of the Fourth Amendment of the Constitution of the United States "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." Bivens, 403 U.S. at 389.  Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the color of federal authority violates the plaintiff's constitutional rights. See Bivens, 403 U.S. at 389.  See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit has recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at

371).  The Tenth Circuit noted that the Supreme Court in <u>Rizzo v. Goode</u> found a sufficient link

between the police misconduct and the city officials' conduct, because there was a deliberate plan

by some of the named defendants to "'crush the nascent labor organizations.'"   <u>Dodds v.</u>

<u>Richardson</u>, 614 F.3d at 1200 (quoting <u>Rizzo v. Goode</u>, 423 U.S. at 371).

<strong><u>LAW REGARDING FEDERAL QUESTION JURISDICTION</u></strong>

A federal district court has "original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   Federal question

jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly

pleaded complaint."  <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)(citing <u>Gully v. First</u>

<u>Nat'l Bank</u>, 299 U.S. 109, 112-13 (1936)).  As "the master of the claim," the plaintiff may choose

to sue in state court rather than in federal court "by exclusive reliance on state law."  <u>Caterpillar,</u>

<u>Inc. v. Williams</u>, 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a

federal defense, for "it is now settled law that a case may not be removed to federal court on the

basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and

even if both parties concede that the federal defense is the only question truly at issue." <u>Caterpillar,</u>

<u>Inc. v. Williams</u>, 482 U.S. at 393 (citing <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>,

463 U.S. 1, 12 (1983)).  <u>See</u> <u>Nicodemus v. Union Pac. Corp.</u>, 318 F.3d 1231, 1236 (10th Cir.

2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer

federal jurisdiction.'" (quoting <u>Merrell Dow Pharm., Inc. v. Thompson</u>, 478 U.S. 804, 808

(1986))).  While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot,

merely by injecting a federal question into an action that asserts what is plainly a state-law claim,

transform the action into one arising under federal law, thereby selecting the forum in which the

- 8 -

claim shall be litigated." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. at 399.  Even the plaintiff can go

only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the

complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable

defense are to be disregarded" in deciding whether federal-question jurisdiction exists. <u>Mescalero</u>

<u>Apache Tribe v. Martinez</u>, 519 F.2d 479, 481 (10th Cir. 1975).

      In addition to the requirement that the federal question appear on the complaint's face, a

"plaintiff's cause of action must either be (i) created by federal law, or (ii) if it is a state-created

cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'"

<u>Nicodemus v. Union Pac. Corp.</u>, 318 F.3d at 1235 (quoting <u>Merrell Dow Pharm., Inc. v.</u>

<u>Thompson</u>, 478 U.S. at 808). As for the second method, beyond the requirement of a substantial

question of federal law at the heart of the case, the federal question must also be "contested."

<u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 313 (2005).  Finally, the

exercise of federal-question jurisdiction also must be "consistent with congressional judgment

about the sound division of labor between state and federal courts governing the application of

§ 1331." <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 545 U.S. at 318-19 (explaining that

"there must always be an assessment of any disruptive portent in exercising federal jurisdiction"

in accepting "garden variety" state law claims).

      In <u>Bar J Sand & Gravel, Inc. v. W. Mobil N.M. Inc.</u>, No. Civ. 05-800 JB/WPL, 2005 WL

3663689 (D.N.M. Sept. 29, 2005)(Browning, J.), the plaintiff's complaint stated causes of action

for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade

practices. <u>See</u> 2005 WL 3663689, at *7. The defendants argued that a federal question was

apparent on the complaint's face.

because, as a necessary first step in proving a breach of contract, Bar J must show
that a valid contract actually exists between Bar J and the Defendants. To establish
that the parties entered into a valid contract, Bar J must show that all conditions
precedent were met, including Bar J's possession of a valid [Sand and Gravel]
Permit [that the Pueblo of San Felipe issued to Bar J Trucking, Inc.]. In turn,
whether Bar J acquired a valid Permit requires reference to the federal regulations
governing the issuance of those permits. Reaching the last link in their chain of
argument, the Defendants assert that the federal question is whether the creation of
the Permit complied with those regulations.

Bar J Sand & Gravel, Inc. v. W. Mobil N.M. Inc., 2005 WL 3663689, at *8 (internal citations

omitted).  The Court determined that the defendants' argument confused "a condition precedent to

contract performance with a condition precedent to contract formation" and that the argument was

raising an issue of federal law as a potential defense, rather than as an element of the plaintiff's

case; accordingly, the issue did not appear on the face of the plaintiff's complaint.  Bar J Sand &

Gravel, Inc. v. W. Mobil N.M. Inc., 2005 WL 3663689, at *8-9 (emphasis in original).  The

defendants also argued that a decision whether the plaintiffs validly assigned the Permit to the

defendants would raise an issue of federal law, because, "[u]nder federal regulations, an

assignment of the Permit would be invalid without approval by the Secretary of the Interior";  the

Court rejected this argument, because the plaintiff did not request "vindication of any assignment"

in the complaint, and the Court determined the plaintiff was justified in that choice.  2005 WL

3663689, at *9.  The Court further determined that the Supreme Court's decision in Grable & Sons

Metal Prods. v. Darue Eng'g & Mfg. did not change the result, because,

[u]nlike Grable, Bar J does not premise its breach of contract claim on any
point of federal law. Bar J does not assert that it has a right to recover from the
Defendants because of the existence of some federal law. Bar J argues neither that
the Defendants violated a federal statute nor that the [contract's] validity requires
the interpretation or application of any provision of the United States Code.

2005 WL 3663689, at *12 (internal citations omitted).  The Court concluded that, because the

plaintiff grounded its right to relief in "basic contract law," without "referencing any federal law,"

the well-pleaded complaint did not raise an issue of federal law and, thus, the Court did not have federal-question jurisdiction. 2005 WL 3663689, at *13.  In Olsen v. Quality Continuum Hospice, Inc., 380 F. Supp. 2d 1225 (D.N.M. 2004)(Browning, J.), the Court determined that the plaintiff's claims did not present any federal questions; although the plaintiff asserted that the defendants violated the "United States Social Security Act of 1968 [and] . . . the Medicare program,"[2] the Court concluded that those provisions do not create a private right of action and, thus, did not create the plaintiff's causes of action.  380 F. Supp. 2d at 1229.  The Court also determined that, because the plaintiff's causes of action were essentially medical malpractice claims and arose under New Mexico common law or New Mexico statutes, they would not depend on resolution of a question of federal law.  See 380 F. Supp. 2d at 1230-31.

## LAW REGARDING THE FTCA

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212, 212 n.9 (1983)(citing United States v. Sherwood, 312 U.S. 584, 586 (1941); 14 Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3654, at 156-157 (1976)).  See Garcia v. United States, 709 F. Supp. 2d 1133, 1137 (D.N.M. 2010)(Browning, J.)("The United States cannot be sued without its consent.  Congressional consent -- a waiver of the traditional principle of sovereign immunity -- is a prerequisite for federal-court jurisdiction.").  The law generally places the burden of proving federal jurisdiction on the proponent of jurisdiction, and the party suing the United States thus similarly bears the burden of proving that sovereign immunity has been waived.  See James v. United States, 970 F.2d

---

[2]Social Security Act of 1965, Pub. L. 89-97, 79 Stat. 286, and Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, 117 Stat. 2066.

at 753.  See also Garcia v. United States, 709 F. Supp. 2d at 1138 ("The plaintiff bears the burden of proving that Congress has waived sovereign immunity for all of his claims.").  The terms of the United States' consent define the federal court's jurisdiction to entertain suits against the country. See United States v. Orleans, 425 U.S. at 814; Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985).  Although a "waiver of immunity should be neither extended nor narrowed beyond that which Congress intended," United States v. Kubrick, 444 U.S. 111, 117-18 (1979); see Ewell v. United States, 776 F.2d at 248, "[w]aivers of sovereign immunity are to be read narrowly," James v. United States, 970 F.2d at 753 (citing Engel v. United States (Estate of Johnson), 836 F.2d 940, 943 (5th Cir. 1988); Schmidt v. King, 913 F.2d 837, 839 (10th Cir. 1990)).  "A waiver of sovereign immunity 'cannot be implied and must be unequivocally expressed.'"  United States v. Mitchell, 445 U.S. 535, 538 (1980)(quoting United States v. King, 395 U.S. 1, 4, 89 (1969)).  See United States v. Nordic Vill., Inc., 503 U.S. at 33-34; United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996).

The Tenth Circuit has emphasized that all dismissals for lack of jurisdiction, including those for a failure to establish a waiver of sovereign immunity under the FTCA, should be without prejudice.  See Mecca v. United States, 389 F. App'x 775, 780 (10th Cir. 2010)(unpublished).[3]  It

---

[3]Mecca v. United States, 389 F. App'x 775, 780 (10th Cir. 2010) is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Mecca

has explained: "'A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.'" Mecca v. United States, 389 F. App'x at 780 (quoting Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir. 2006)).  The Tenth Circuit held in Mecca v. United States that the district court improperly dismissed with prejudice the plaintiff's FTCA claims after it concluded that it lacked jurisdiction over those claims. See 389 F. App'x at 780-81 ("Here, because the district court found itself without jurisdiction over the FTCA claims, dismissal should have been entered without prejudice, even if the court deemed further amendment futile.  We therefore remand with instructions to enter dismissal of these claims without prejudice.").  When an FTCA claim is dismissed under rule 12(b)(6) of the Federal Rules of Civil Procedure in a manner that "actually passes directly on the substance of a particular claim," however, it  constitutes a dismissal on the merits, which triggers the FTCA's judgment bar.[4]  Brownback v. King, 141 S. Ct. 740, 748 (2021)(citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501-02 (2001)).  "A plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim."[5] Brownback

---

v. United States, 389 F. App'x 775 (10th Cir. 2010), Morrison v. Kache, 576 F. App'x 715 (10th Cir. 2014), Ruppert v. Aragon, 448 F. App'x 862 (10th Cir. 2012), Stevens v. United States, 61 F. App'x 625 (10th Cir. 2003), Gaines v. Pearson, 516 F. App'x 724 (10th Cir. 2013) and Kelly v. Rockefeller, 69 F. App'x 414 (10th Cir. 2003), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[4]The FTCA's judgment bar precludes a subsequent action against an employee of the government on the same claim: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676.

[5]The six elements are enumerated in FDIC v. Meyer, 510 U.S. 471 (1994), as: "claims that are: '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property,

v. King, 141 S. Ct. at 749.  Although a court may not generally issue a ruling on the merits when

it lacks subject-matter jurisdiction, in the context of an FTCA claim, where "pleading a claim and

pleading jurisdiction entirely overlap, a ruling that the court lacks subject matter jurisdiction may

simultaneously be a judgment on the merits that triggers the judgment bar."  Brownback v. King,

141 S. Ct. at 749 (citing FDIC v. Meyer, 5100 U.S. 471, 477 (1994)).

In 1948, Congress enacted the FTCA, which waives the United States' sovereign immunity

for some tort actions against the United States seeking money damages.  See 28 U.S.C. § 1346(b);

Fed. Deposit Ins. v. Meyer, 510 U.S. 471, 475 (1994); Warren v. United States, 244 F. Supp. 3d

1173, 1212 (D.N.M. 2017)(Browning, J.); Romanach v. United States, 579 F. Supp. 1017, 1019

(D.P.R. 1984)(Laffitte, J.).  In enacting the FTCA, Congress waived the United States' sovereign

immunity as to

> claims against the United States, for money damages accruing on and after January
> 1, 1945, for injury or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, under circumstances where the
> United States, if a private person, would be held liable to the claimant in accordance
> with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  "The FTCA's waiver of sovereign immunity is limited, however."  Cortez

v. EEOC, 585 F. Supp. 2d 1273, 1284 (D.N.M. 2007)(Browning, J.).  "If the claim does not fall

within the FTCA's express provisions, or if it falls within one of its exceptions, the claim is not

cognizable under the FTCA, and the court must deny relief."  Cortez v. EEOC, 585 F. Supp. 2d at

1284 (citing Williams v. United States, 50 F.3d at 304-05).  Moreover, the only proper party in an

---

or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee
of the Government [5] while acting within the scope of his office or employment, [6] under
circumstances where the United States, if a private person, would be liable to the claimant in
accordance with the law of the place where the act or omission occurred.'"  FDIC v. Meyer, 510
U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

- 14 -

action under the FTCA is the United States.  See 28 U.S.C. § 2679(a); Romanach v. United States, 579 F. Supp. at 1018 n.1 (holding that no suit under the FTCA may lie against any agency of the United States eo nomine); Painter v. FBI, 537 F. Supp. 232, 236 (N.D. Ga. 1982)(Forrester, J.)(holding that "[t]he FBI may not be sued eo nomine").

Even when the FTCA waives the United States' sovereign immunity, the United States is liable for FTCA claims, if at all, only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  "The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."  Richards v. United States, 369 U.S. 1, 6 (1962).  The FTCA leaves untouched the states' laws that might apply to the United States once Congress removes that immunity.  The Supreme Court has noted:

> Rather, [the FTCA] was designed to build upon the legal relationships formulated and characterized by the States, and, to that extent, the statutory scheme is exemplary of the generally interstitial character of federal law.  If Congress had meant to alter or supplant the legal relationships developed by the States, it could specifically have done so to further the limited objectives of the Tort Claims Act.

Richards v. United States, 369 U.S. at 6-7.  Accordingly, "the United States is placed in the same position as a private individual by rendering the United States liable for the tortious conduct of its employees if such conduct is actionable in the state in which the United States' action or inaction occurred."  Cortez v. EEOC, 585 F. Supp. 2d at 1284.  Cf. Garcia v. United States, No. CIV 08-0295 JB/WDS, 2010 WL 2977611, at *18 (D.N.M. June 15, 2010)(Browning, J.)("The law of the place where the alleged negligent conduct took place determines the scope of employment under the FTCA." (citing 28 U.S.C. § 1346(b)).  See Richards v. United States, 369 U.S. at 9; Williams

v. United States, 350 U.S. 857, 857 (1955); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970).

The United States' liability is coextensive with that of private individuals under the respective states' law, even if comparable government actors or public entities would have additional defenses or additional obligations under that state's law.  See United States v. Olson, 546 U.S. 43, 44-47 (2005); In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs), 668 F.3d 281, 288 (5th Cir. 2012)("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.  Inherent differences between the government and a private person cannot be allowed to disrupt this analysis." (citing LaBarge v. Cty. of Mariposa, 798 F.2d 364, 366-69 (9th Cir. 1986); United States v. Olson, 546 U.S. at 47)); DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 283 n.9 (3d Cir. 2007)("Under the FTCA, the federal government can only be held liable for breaches of duties imposed on private, rather than state, parties."); Ewell v. United States, 776 F.2d at 248-49; Cox v. United States, 881 F.2d 893, 895 (10th Cir. 1989)(stating that "[t]his and other courts have applied the same rationale in holding that the United States may invoke the protection of a [private] recreational use statute"); Proud v. United States, 723 F.2d 705, 706 (9th Cir. 1984)("But appellants overlook the fact that in enacting the FTCA, Congress -- not the Hawaii Legislature -- determined the tort liability of the United States.  And the FTCA specifically provides that the federal government's tort liability is co-extensive with that of a private individual under state law.").  The Tenth Circuit reasoned in Ewell v. United States:

> The main goal of the FTCA was to waive sovereign immunity so that the federal government could be sued as if it were a private person for ordinary torts. Congress was primarily concerned with allowing a remedy where none had been allowed.  There is no evidence that Congress was concerned with the prospect that immunities created solely for private persons would shield the United States from

suit.  The Supreme Court, in <u>United States v. Muniz</u>, 374 U.S. 150 . . . (1963), considered whether it is appropriate to apply immunities created by state law to the United States when it is sued under the FTCA.  The Court was concerned with state laws that immunized prison officials from suits by prisoners and concluded that it is "improper to limit suits by federal prisoners because of restrictive state rules of immunity."  374 U.S. at 164 . . . .  The immunity under consideration in that case applied to state, county and municipal prison officials.  Noting its decision in <u>Indian Towing Co. v. United States</u>, 350 U.S. [61]at 65 [(1955)] . . . wherein the Court determined that federal liability had to be determined as if it were a private person and not as if it were a municipal corporation, it concluded that state law immunity applicable to state, county and municipal prison officials would not be applicable to a private person and, therefore, not applicable to the federal government in a suit under the FTCA.

Thus, while immunities afforded state, county and municipal employees are not applicable to the federal government when sued under the FTCA, immunities created by state law which are available to private persons will immunize the federal government because it is liable only as a private individual under like circumstances.  It is evident, therefore, that the Utah district court was correct in granting the motion for summary judgment.

<u>Ewell v. United States</u>, 776 F.2d at 249.

The FTCA "does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs."  <u>United States v. Agronics Inc.</u>, 164 F.3d 1343, 1345 (10th Cir. 1999).  The Tenth Circuit has recognized that "[o]ther courts invoke the same rule by the shorthand expressions of immune 'quasi-legislative' or 'quasi-judicial' action."  <u>United States v. Agronics Inc.</u>, 164 F.3d at 1345.  Thus, for example, courts have rejected FTCA claims premised upon such administrative/regulatory acts or omissions as: (i) the Federal Aviation Administration's failure to take enforcement action against an entity not complying with federal laws and rules; (ii) the Agriculture Department's failure to prohibit the exportation of disease-exposed cattle; and (iii) various agencies' noncompliance with proper rulemaking procedures.  <u>See United States v. Agronics Inc.</u>, 164 F.3d at 1346 (collecting cases).

The Court examined the exceptions to the FTCA's waiver of sovereign immunity in <u>Coffey v. United States</u>, 906 F. Supp. 2d at 1157.  In that case, a plaintiff brought a wrongful death and negligence action against the United States Bureau of Indian Affairs ("BIA") based on its decision to contract with a county detention center.  <u>See</u> 906 F. Supp. 2d at 1121. The United States argued against liability on the grounds that the detention center was an independent contractor and that the United States' decision to contract with it fell within the FTCA's discretionary-function exemption.  <u>See</u> 906 F. Supp. 2d at 1121. The Court agreed on both points.  <u>See</u> 906 F. Supp. 2d at 1121.  It explained that the BIA's decision to contract with the detention center was "a matter of the BIA's judgment and choice, which is susceptible to policy analysis," and thus protected under the discretionary function exemption.  906 F. Supp. 2d at 1157.  It added that the United States "is liable under the FTCA for the actions of its employees only," thereby prohibiting liability for the detention center's actions.  906 F. Supp. 2d at 1164.

## LAW REGARDING THE FTCA'S EXHAUSTION REQUIREMENT AND STATUTE OF LIMITATIONS

Two procedural steps limit plaintiffs' abilities to sue pursuant to the FTCA: (i) an administrative exhaustion requirement; and (ii) a statute of limitations.  <u>See</u> <u>Barnes v. United States</u>, 776 F.3d 1134, 1139 (10th Cir. 2015).  Together the steps define the time period within which the plaintiff may bring a suit.  <u>See</u> <u>Barnes v. United States</u>, 776 F.3d at 1139.  A plaintiff must provide the agency notice of his, her, or its claims, <u>see</u> 28 U.S.C. § 2675(a), and must present the claim within a limited time after the claim accrues, <u>see</u> 28 U.S.C. § 2401(b).

### 1.    <u>Exhaustion Requirements</u>.

The exhaustion requirement is "'jurisdictional and cannot be waived.'"  <u>Morrison v. Kache</u>, 576 F. App'x 715, 717 (10th Cir. 2014)(unpublished)(quoting <u>Bradley v. U.S. ex rel. Veterans</u>

Admin., 951 F.2d 268, 270 (10th Cir. 1991)).  Before bringing an action in federal court, a claimant must present the claim to the appropriate federal agency; the FTCA's jurisdictional statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  This statute "requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 852 (quoting Bradley v. U.S. ex rel. Veterans Admin., 951 F.2d at 270).

"[A] claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which plaintiff seeks to hold the government liable.'"  Staggs v. U.S. ex rel. Dep't of Health & Human Servs., 425 F.3d 881, 884 (10th Cir. 2005)(quoting Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853).  The Tenth Circuit has added that "the FTCA's notice requirements should not be interpreted inflexibly."  Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853.  Whether a plaintiff's administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question of law.  See Staggs v. U.S. ex rel. Dep't of Health & Human Servs., 425 F.3d at 884; Warren v. United States, 244 F. Supp. 3d at 1213.

### 2.  **Filing Deadlines.**

Once a tort claim accrues against the United States, 28 U.S.C. § 2401 gives a claimant two years to present that claim in writing to the appropriate federal agency.  See 28 U.S.C. § 2401(b)

(explaining that claim is "forever barred" unless presented within two years).  If the agency denies

the claim, the claimant has six months to file suit in federal court.  See 28 U.S.C. § 2401(b).  The

Tenth Circuit has clarified that a party must satisfy both of § 2401's prongs: "28 U.S.C. § 2401(b)

bars a tort claim against the United States 'unless it is presented to the proper agency within two

years of its accrual *and* suit is commenced within six months of notice of the claim's denial by the

agency.'"  Ponce v. United States, No. CIV 13-0334 JB/ACT, 2013 WL 6503535, at *14 (D.N.M.

Nov. 25, 2013)(Browning, J.)(emphasis in Ponce v. United States)(quoting Indus. Constructors

Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994)). )).  28 U.S.C. § 2401(b)'s

time limitations are non-jurisdictional and subject to equitable tolling.  See United States v. Kwai

Fun Wong, 575 U.S. 402, 410-11 (2015).

   If the agency fails to make a final disposition of the claim within six months, the claimant

may "deem . . . " that failure a "final denial of the claim," and proceed with his or her suit under

the FTCA.  28 U.S.C. § 2675(a).  In the Tenth Circuit, "(at least until there has been a final denial

by the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a

deemed denial."  Barnes v. United States, 776 F.3d at 1140.  An agency may

"trigger . . . § 2401(b)'s six-month limitations period through final denial of administrative FTCA

claims after a 'deemed denial.'"  Barnes v. United States, 776 F.3d at 1141.  See Warren v. United

States, 244 F. Supp. 3d at 1213.

### 3.    **Effect of Failure to Exhaust**.

   "[A]s a general rule, a premature 'complaint cannot be cured through amendment, but

instead, plaintiff must file a new suit.'"  Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir.

1999)(quoting Sparrow v. U.S. Postal Serv., 825 F. Supp. 252, 255 (E.D. Cal. 1993)(Wagner, J.)).

This rule exists, because "[a]llowing claimants generally to bring suit under the FTCA before

exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." Duplan v. Harper, 188 F.3d at 1199.  Courts must dismiss these claims "without regard to concern for judicial efficiency." Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012)(unpublished).  Even the filing of an amended complaint may not serve to cure a prematurely filed original complaint.  See Stevens v. United States, 61 F. App'x 625, 627 (10th Cir. 2003)(unpublished).

There is at least one limited exception to the general rule.  Duplan v. Harper recognizes an exception where the United States "expressly agreed" to the district court's decision to treat the amended complaint as a new action.  188 F.3d at 1199.  See Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(concluding that there is a new action where plaintiff "sought permission to file -- and, with the government's consent and district court's permission, did file -- an amended complaint").  See also Warren v. United States, 244 F. Supp. 3d at 1214.

4.    **Definition of "Sufficient Notice."**

Courts define "sufficient notice" based on the facts of each case before them.  In Estate of Trentadue ex rel. Aguilar v. United States, the United States contended that the plaintiffs' administrative claim was insufficient for notice of intentional infliction of emotional distress, because it was based on a theory that prison officials had murdered Trentadue, the inmate, and the allegations did not discuss the specific grounds on which the district court relied in awarding damages, "namely the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval." 397 F.3d at 852.  The Tenth Circuit disagreed, holding that the "plaintiffs' administrative claim provided notice that [the United States Department of Justice ('DOJ')] should

investigate the prison officials' conduct." 397 F.3d at 853. The Tenth Circuit reasoned that language within the administrative claim "gave DOJ notice of the facts and circumstances surrounding plaintiffs' emotional distress claim and, moreover, is consistent with the plaintiffs' subsequent allegations in their amended complaints." 397 F.3d at 853.

The Tenth Circuit contrasted Estate of Trentadue ex rel. Aguilar v. United States with Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34 (1st Cir. 2000), where the United States Court of Appeals for the First Circuit held that the plaintiff's administrative claim did not put the agency on notice that it should have investigated the potentially tortious conduct, because the plaintiff's administrative claims were for "misrepresentation, libel, slander, contractual interference, and discrimination," and the amended claims for false arrest arose out of two separate incidences. 221 F.3d at 40. The First Circuit stated: "Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it." 221 F.3d at 40. The First Circuit thus concluded that, "regardless of the labels employed in the amended complaint, that complaint, in substance, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim." 221 F.3d at 40 (emphasis omitted).

In Glade ex rel. Lundskow v. United States, 692 F.3d 718 (7th Cir. 2012), a man receiving mental health treatment at a Veterans Administration ("VA") facility alleged that his therapist worsened his condition by initiating a sexual relationship with him. See 692 F.3d at 720. He filed a notice of claim with the VA that "does not mention a failure of anyone to use due care besides the therapist." 692 F.3d at 722. The United States Court of Appeals for the Seventh Circuit, reviewing the notice, commented that "reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act." 692

F.3d at 722.  The plaintiff recognized this problem before filing his complaint and thus asserted a

"special relationship" theory of liability instead.  692 F.3d at 723.  The Seventh Circuit affirmed

the district court's decision to dismiss the suit, explaining:

> The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability.  *Palay v. United States,* 349 F.3d 418, 425-26 (7th Cir. 2003); *Murrey v. United States,* 73 F.3d 1448, 1452-53 (7th Cir. 1996).  The plaintiff's claim didn't do that.  The legally trained reader would assume that the plaintiff simply was unaware that the mere fact of a battery by a VA employee would not impose liability on the employer.  We're about to see that the "special relationship" tort theory advanced in the plaintiff's complaint (as distinct from the administrative claim) is outside the bounds of plausibility -- hardly the sort of theory that the VA's legal department should have guessed would be the ground of a lawsuit.

Glade ex rel. Lundskow v. United States, 692 F.3d at 722-23.  See Warren v. United States, 244

F. Supp. 3d at 1215.

## LAW REGARDING THE DISCRETIONARY FUNCTION EXCEPTION

The FTCA contains several exceptions to its waiver of immunity.  See 28 U.S.C. § 2680.

The Supreme Court has characterized § 2680(a) as the "boundary between Congress' willingness

to impose tort liability upon the United States and its desire to protect certain governmental

activities from exposure to suit by private individuals."  United States v. Varig Airlines, 467 U.S.

808.  These exceptions must be strictly construed in the United States' favor.  See U.S. Dep't of

Energy v. Ohio, 503 U.S. 607, 615 (1992)("Waivers of immunity must be 'construed strictly in

favor of the sovereign' and not 'enlarge[d] . . . beyond what the language requires.'"  (alterations

in U.S. Dep't of Energy v. Ohio)(first quoting McMahon v. United States, 342 U.S. 25, 27 (1951);

then quoting E. Transp. Co. v. United States, 272 U.S. 676, 686 (1927)).

The discretionary function exception provides that the FTCA shall not apply to claims

"based upon the exercise or performance or the failure to exercise or perform a discretionary-

function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Its application is a threshold jurisdictional issue in any FTCA case. See Johnson v. U.S. Dep't of Interior, 949 F.2d 332, 335 (10th Cir. 1991). Cf. Warren v. United States, 244 F. Supp. 3d at 1233 (noting that, at the motion-to-dismiss stage, in an FTCA case, a plaintiff "must establish more than . . . abstract negligence" "and, instead, must also first establish that her claims are not based upon actions immunized from liability under the FTCA's discretionary function exception"). In Berkovitz by Berkovitz v. United States, the Supreme Court enunciated a two-prong analysis for determining when the FTCA's discretionary function exception applies. See 486 U.S. at 536; Domme v. United States, 61 F.3d at 789-90; Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972-73 (10th Cir. 1994); Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993). First, the acts or omissions must be "discretionary in nature, acts that 'involve an element of judgment or choice.'" United States v. Gaubert, 499 U.S. at 322 (quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 536). Second, the conduct must be "'based on considerations of public policy.'" United States v. Gaubert, 499 U.S. at 323 (quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 537). See Garling v. U.S. Envtl. Prot. Agency, 849 F.3d 1289, 1294-95, 2017 WL 894432, at *3 (10th Cir. 2017)(unpublished).

An action is not discretionary where a statute, regulation, or policy mandates certain conduct, because the employee has "no room for choice." United States v. Gaubert, 499 U.S. 315, 324 (1991). See Garcia v. U.S. Air Force, 533 F.3d at 1176 ("Conduct is not discretionary if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.'" (quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 537)). On the other hand,

> [w]here Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs.

United States v. Gaubert, 499 U.S. at 323.

Berkovitz by Berkovitz v. United States' second prong protects conduct if it was or could have been "'based on considerations of public policy.'"  Kiehn v. United States, 984 F.2d at 1105 (quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 537).  This principle is a result of the rule that the second prong requires that the challenged conduct must be, by its nature, "susceptible to policy analysis."  United States v. Gaubert, 499 U.S. at 325.  Where agency policy allows an employee to exercise discretion, there is a "strong presumption" that the acts authorized by the policy are grounded in public policy.  United States v. Gaubert, 499 U.S. at 324.  Where a plaintiff alleges a negligent omission, it is "irrelevant whether the [omission] was a matter of 'deliberate choice,' or a mere oversight," Kiehn v. United States, 984 F.2d at 1105 (quoting Allen v. United States, 816 F.2d 1417, 1422 n.5 (10th Cir. 1987)), because "[t]he failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability," Kiehn v. United States, 984 F.2d at 1105.

The two-prong test in Berkovitz by Berkovitz v. United States applies equally to all government employees, regardless of their rank or position: "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."  United States v. Varig Airlines, 467 U.S. at 813.  See United States v. Gaubert, 499 U.S. at 325 ("Discretionary conduct is not confined to the policy or planning level."); United States

v. Varig Airlines, 467 U.S. at 811 ("'Where there is room for policy judgment and decision there is discretion.  It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.'" (quoting Dalehite v. United States, 346 U.S. 15, 35-36 (1953))).

In applying the Berkovitz by Berkovitz v. United States analysis, the question of negligence is irrelevant: "When the government performs a discretionary function, the exception to the FTCA applies regardless of 'whether or not the discretion involved was abused.'"   Redman v. United States, 934 F.2d 1151, 1157 (10th Cir. 1991)(quoting 28 U.S.C. § 2680(a)).  A court must decide first whether the discretionary function exception shields the "government's conduct" before the court addresses the government's duties under the common law.  Domme v. United States, 61 F.3d at 789.  The Tenth Circuit has explained:

> Considering state tort law as a limit on the federal government's discretion at the jurisdictional stage impermissibly conflates the merits of plaintiffs' claims with the question whether the United States has conferred jurisdiction on the courts to hear those claims in the first place.  Indeed, the only conceivable way plaintiffs might succeed on their theory is by pointing to a *federal* policy incorporating state tort law as a limit on the discretion of federal employees with the meaning of the FTCA.

Sydnes v. United States, 523 F.3d 1179, 1184 (10th Cir. 2008).

## **LAW REGARDING THE FTCA'S INDEPENDENT CONTRACTOR EXCEPTION**

Torts committed through independent contractors' acts are excepted from the FTCA, although not pursuant to 28 U.S.C. § 2680's exceptions.  See Curry v. United States, 97 F.3d at 414 (citing United States v. Orleans, 425 U.S. at 814; Logue v. United States, 412 U.S. at 527).  The FTCA's waiver of sovereign immunity applies to government employees acting within their employment's scope, see, e.g., Tsosie v. United States, 452 F.3d at 1163 (citing Curry v. United States, 97 F.3d at 414), and the statute defines the term "federal employees" for FTCA purposes as "officers or employees of any federal agency," and "federal agency" to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States," but not to "include any contractor with the United States," 28 U.S.C. § 2671.  Accordingly, government employees include "officers and employees of federal agencies," but not independent contractors and their employees.  Tsosie v. United States, 452 F.3d at 1163 (citing Curry v. United States, 97 F.3d at 414).

"[T]he question whether one is an employee of the United States is to be determined by federal law."  Waconda v. United States, No. CIV 06-0101 JB/ACT, 2007 WL 2219472, at *10 (D.N.M. May 23, 2007)(Browning, J.)(quoting Lurch v. United States, 719 F.2d 333, 337 (10th Cir. 1983)).  Under federal law, the analysis focuses on whether the alleged principal controls the contractor's physical performance of his, her, or its work.  See Lurch v. United States, 719 F.2d at 337 (citing United States v. Orleans, 425 U.S. at 814).[6]  If the principal controls the conduct,

---

[6]In drawing this distinction between independent contractors and employees, the Supreme Court imported the common law of tort's test for identifying employer-employee relationships, see Logue v. United States, 412 U.S. at 525-28, and, as early as 1973, described this test as one of the alleged principal's control, and, thus, of the alleged principal's supervision, over the

the contractor is an employee rather than an independent contractor.  See Lurch v. United States, 719 F.2d at 337.  "The key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual."  Lurch v. United States, 719 F.2d at 337 (citing United States v. Orleans, 425 U.S. at 815).  The Tenth Circuit has directed courts engaging in this inquiry to consider:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses h[is] own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Curry v. United States, 97 F.3d at 414 (citing Lilly, 876 F.2d at 859).

## LAW REGARDING THE FTCA'S INTENTIONAL TORT EXCEPTION

"Congress was careful to except from the Act's broad waiver of immunity several classes of tort claims."  United States v. Varig Airlines, 467 U.S. 797, 808 (1984).  The waiver of immunity set forth in 28 U.S.C. § 1346(b) is subject to thirteen statutory exceptions enumerated in 28 U.S.C. § 2680.  See Kosak v. United States, 465 U.S. 848, 852 (1984).  Specifically, under section 2680(h), the United States retains its sovereign immunity with respect to "[a]ny claim arising out of assault, battery," and other enumerated intentional torts.  The exception is, however, subject to the following:

> Provided, that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) . . . shall apply to any claim arising . . . out of assault, battery, false imprisonment, false imprisonment, false arrest, abuse of process, or malicious

---

contractor's work, see Logue v. United States, 412 U.S. at 527; cf. United States v. Orleans, 425 U.S. at 814-15 (describing that, as in Logue v. United States, and Maryland v. United States, 381 U.S. 41 (1965), "the question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government").

prosecution. . . .  For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law.

28 U.S.C. § 2680(h).  By this proviso, section 2680(h) waives the defense of sovereign immunity for suits against the United States for certain intentional torts that its law enforcement officers commit while acting within the scope of their employment.  See Dry v. United States, 235 F.3d 1249, 1257 (10th Cir. 2000).  An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).

When a § 2680 exception to the FTCA bars a claim, the court lacks subject-matter jurisdiction to hear the case.  Although liability under the FTCA generally depends on the law of the state where the allegedly negligent or wrongful act or omission occurred, see 28 U.S.C. § 1346(b)(1), whether a claim is excepted by § 2680(h) is a question of federal law, see United States v. Neustadt, 366 U.S. 696, 705-06 (1961); Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993).  The law of the place where the alleged negligent conduct took place determines the scope of employment under the FTCA.  See Williams v. United States, 350 U.S. 857, 857 (1955)(per curiam); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970); 28 U.S.C. § 1346(b).

## ANALYSIS

Having carefully reviewed the Complaint and the relevant law, the Court will dismiss this case for failure to state a claim upon which relief can be granted.  The Court dismisses Chavez' claim against the United States pursuant to the Federal Tort Claims Act, because the Complaint does not contain factual allegations showing that she timely filed a tort claim with the USDA or

that she timely filed this case.  See Ponce v. United States, No. CIV 13-0334 JB/ACT, 2013 WL 6503535, at \*14 (D.N.M. Nov. 25, 2013)(Browning, J.)("28 U.S.C. § 2401(b) bars a tort claim against the United States 'unless it is presented to the proper agency within two years of its accrual and suit is commenced within six months of notice of the claim's denial by the agency.'")(emphasis in Ponce v. United States)(quoting Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994)); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936))(holding that federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint").  If Chavez is asserting claims against the USDA and the John Doe Defendants pursuant to the FTCA, the Court dismisses those claims because "[t]he United States is the only proper defendant in a federal tort claims action." Gaines v. Pearson, 516 F. App'x 724, 726 (10th Cir. 2013)(unpublished).

The Court dismisses Chavez' fraud claim, because the Complaint does not "state with particularity the circumstances constituting fraud" as rule 9(b) of the Federal Rules of Civil Procedure requires.  Fed. R. Civ. P. 9(b).  See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-727 (10th Cir. 2006)("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud . . . and must set forth the time [and date], place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.").  The Court dismisses Chavez' claims pursuant to 18 U.S.C. § 1344, Bank fraud, 18 U.S.C. § 1028A, Aggravated identity theft, and 18 U.S.C. § 242, Deprivation of rights under color of law, because 18 U.S.C. § 1344, 18 U.S.C. § 1028A, and 18 U.S.C. § 242 do not provide for private civil causes of action.  See Kelly v. Rockefeller, 69 F. App'x 414, 415-16 (10th Cir. 2003).  The Complaint fails to state a

claim against the USDA pursuant to the RESPA, 12 U.S.C. § 2607(a), because Section 2607(a) applies to "persons" and the USDA is not a person under the RESPA. See 12 U.S.C. § 2602(5)("[T]he term 'person' includes individuals, corporations, associations, partnerships, and trusts"). The Court dismisses Chavez' claim against the USDA pursuant to the RESPA for failure to state a claim.

If Chavez intends the claims against the John Doe defendants to be claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), Chavez must show that a federal officer acting under the color of federal authority has violated her constitutional rights. See Bivens, 403 U.S. at 389. Chavez does not allege any facts showing that each John Doe Defendant violated Chavez' constitutional rights, and so, Chavez does not state a claim under Bivens. Accordingly, the Court must dismiss those claims without prejudice for failure to state a claim upon which relief can be granted.

**IT IS ORDERED** that: (i) the Plaintiff's Complaint for Damages Caused by Fraud, Deprivation of Civil Rights and Other Tortious Conduct, filed September 3, 2021 (Doc. 1), is dismissed without prejudice; (ii) this case is dismissed without prejudice; and (iii) Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

Nattlee Nichole Chavez
Espanola, New Mexico

    *Plaintiff pro se*

- 31 -